# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| SCA Pharmaceuticals, LLC,<br><br>            Plaintiff,<br><br>   v.<br><br>U.S. Food and Drug Administration, *et al.*,<br><br>            Defendants. | Case No. 3:23-cv-01462-SRU |

## Defendants' Memorandum in Support of their Motion to Dismiss

OF COUNSEL:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human
Services

MARK RAZA
Chief Counsel

WENDY VICENTE
Deputy Chief Counsel, Litigation

LEAH A. EDELMAN
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD  20993-0002

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

JAMES W. HARLOW
Acting Assistant Director
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 514-6786
james.w.harlow@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

   I.   FDA's relevant authorities to inspect and to inform ................................. 3

   II.   FDA's inspection of SCA's Windsor establishment ................................. 5

   III.  SCA's lawsuit ............................................................................................ 7

LEGAL STANDARD ............................................................................................................ 7

ARGUMENT ....................................................................................................................... 8

   I.   SCA's speculative challenge to an unissued statement is not justiciable ................. 8

     A.   This case is constitutionally unripe because no harm to SCA is imminent ...... 9

     B.   This case is prudentially unripe because no final agency action exists .......... 11

       1.   A hypothetical statement is not "agency action" or "final agency action" . 12

       2.   A due process analysis of a hypothetical statement is premature ............... 15

       3.   SCA would suffer no hardship from deferring review ................................ 17

     C.   FDA's discretionary decisions about whether to disseminate information are unreviewable under the APA ........................................................ 17

   II.   SCA also fails to plead any plausible claim for relief .............................. 18

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Abbott Lab'ys v. Gardner*,
   387 U.S. 136 (1967) ................................................................................................ 12

*Abramson v. Pataki*,
   278 F.3d 93 (2d Cir. 2002) ..................................................................................... 19

*Air Espana v. Brien*,
   165 F.3d 148 (2d Cir. 1999) ................................................................................... 12

*Amoco Prod. Co. v. Watson*,
   410 F.3d 722 (D.C. Cir. 2005) ............................................................................... 13

*Arrow Reliance, Inc. v. Califf*,
   Case No. 2:22-cv-1057, 2022 WL 18027595 (W.D. Wash. Dec. 30, 2022) .................. 14, 15

*Arrow Reliance, Inc. v. Woodcock*,
   Case No. 2:22-cv-1057, 2022 WL 3104102 (W.D. Wash. Aug. 4, 2022) .......... 11, 12, 14, 15

*Asbestec Const. Servs., Inc. v. EPA*,
   849 F.2d 765 (2d Cir. 1988) ................................................................................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 7, 10

*Athenex Inc. v. Azar*,
   397 F. Supp. 3d 56 (D.D.C. 2019) ............................................................................ 5

*Autotech Collision Inc. v. The Inc. Vill. of Rockville Ctr.*,
   673 F. App'x 71 (2d Cir. 2016) .............................................................................. 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 7

*Bennett v. Spear*,
   520 U.S. 154 (1997) .......................................................................................... 13, 14

*BP Am. Prod. Co. v. Burton*,
   549 U.S. 84 (2006) ................................................................................................. 13

*Brezler v. Mills*,
   86 F. Supp. 3d 208 (E.D.N.Y. 2015) ...................................................................... 15

*Bryant v. N.Y. State Educ. Dep't,*
   692 F.3d 202 (2d Cir. 2012) ................................................................ 19

*Carter v. HealthPort Techs., LLC,*
   822 F.3d 47 (2d Cir. 2016) .................................................................... 7

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002) ................................................................ 10

*City of L.A. v. Lyons,*
   461 U.S. 95 (1983) ........................................................................ 9, 10

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) .................................................................. 8, 9, 10

*Coffran v. Bd. of Trs. of N.Y.C. Pension Fund,*
   46 F.3d 3 (2d Cir. 1995) ...................................................................... 15

*Connecticut v. Duncan,*
   612 F.3d 107 (2d Cir. 2010) ................................................................ 17

*Cutie v. Sheehan,*
   645 F. App'x 93 (2d Cir. 2016) ............................................................ 20

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ........................................................................ 7, 8

*Daley v. Mathews,*
   536 F.2d 519 (2d Cir. 1976) ........................................................... 16, 17

*Dietary Supplemental Coalition, Inc. v. Sullivan,*
   978 F.2d 560 (9th Cir. 1992) ............................................................... 13

*Dimare Fresh, Inc. v. United States,*
   808 F.3d 1301 (Fed. Cir. 2015) ........................................................... 15

*Flue-Cured Tobacco Cooperative Stabilization Corp. v. EPA,*
   313 F.3d 852 (4th Cir. 2002) ............................................................... 15

*Gonnella v. SEC,*
   954 F.3d 536 (2d Cir. 2020) ................................................................ 13

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ..................................................................... 17, 18

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984) ..................................................................................................... 8

*Hi-Tech Pharm., Inc. v. Hahn*,
  No. 19-1268 (RBW), 2020 WL 3498588 (D.D.C. June 29, 2020) ........................................ 14

*Holistic Candlers & Consumer Ass'n v. FDA*,
  664 F.3d 940 (D.C. Cir. 2012) .......................................................................... 4, 13, 14

*Hoxsey v. Folsom*,
  155 F. Supp. 376 (D.D.C. 1957) ............................................................................ 14, 18

*Indus. Safety Equip. Ass'n v. EPA*,
  837 F.2d 1115 (D.C. Cir. 1988) ................................................................................. 14

*Int'l Tel. & Tel. Corp. v. Loc. 134, Int'l Bhd. of Elec. Workers*,
  419 U.S. 428 (1975) ................................................................................................... 13

*Kowalczyk v. Barbarite*,
  594 F. App'x 690 (2d Cir. 2014) ............................................................................... 15

*Lacewell v. Off. of Comptroller of Currency*,
  999 F.3d 130 (2d Cir. 2021) ................................................................................... 7, 9

*Loc. No. 773 of the Int'l Ass'n of Firefighters v. City of Bristol*,
  No. 3:11CV1657 MPS, 2013 WL 1442453 (D. Conn. Apr. 9, 2013) ................................... 9

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ............................................................................................. 12, 13

*Lunney v. United States*,
  319 F.3d 550 (2d Cir. 2003) ................................................................................. 17, 18

*N.Y. Civil Liberties Union v. Grandeau*,
  528 F.3d 122 (2d Cir. 2008) ....................................................................................... 11

*Nat'l Wildlife Fed'n v. Goldschmidt*,
  677 F.2d 259 (2d Cir. 1982) ....................................................................................... 16

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ............................................................................................. 8, 18

*Newman-Green, Inc. v. Alfonzo-Lorrain*,
  490 U.S. 826 (1989) .................................................................................................... 9

*Ohio Forestry Ass'n v. Sierra Club,*
  523 U.S. 726 (1998) ................................................................................................... 17

*Paul v. Davis,*
  424 U.S. 693 (1976) ................................................................................................... 19

*Pearl River Union Free Sch. Dist. v. King,*
  214 F. Supp. 3d 241 (S.D.N.Y. 2016) ....................................................................... 13

*Pharm. Mfrs. Ass'n v. Kennedy,*
  471 F. Supp. 1224 (D. Md. 1979) .............................................................................. 13

*Rockwell Int'l Corp. v. United States,*
  549 U.S. 457 (2007) ..................................................................................................... 9

*Sadallah v. City of Utica,*
  383 F.3d 34 (2d Cir. 2004) .................................................................................... 19, 20

*Sharkey v. Quarantillo,*
  541 F.3d 75 (2d Cir. 2008) ........................................................................................ 12

*Simmonds v. INS,*
  326 F.3d 351 (2d Cir. 2003) ................................................................................. 11, 17

*Simon v. E. Ky. Welfare Rights Org.,*
  426 U.S. 26 (1976) ....................................................................................................... 9

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ..................................................................................................... 9

*Swisher Int'l, Inc. v. FDA,*
  No. 21-13088, 2022 WL 320889 (11th Cir. Feb. 3, 2022) ........................................ 13

*Texas v. United States,*
  523 U.S. 296 (1998) ................................................................................................... 11

*Thomas v. City of New York,*
  143 F.3d 31 (2d Cir. 1998) ........................................................................................ 15

*Top Choice Distribs., Inc. v. U.S. Postal Serv.,*
  138 F.3d 463 (2d Cir. 1998) ...................................................................................... 18

*Trading Grp. v. S.W.I.F.T. SCRL,*
  671 F.3d 140 (2d Cir. 2011) .................................................................................... 9, 10

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) ................................................................................ 8

*Trump v. New York,*
  141 S. Ct. 530 (2020) ..................................................................... 8, 11, 17

*United States v. Mitchell,*
  445 U.S. 535 (1980) .................................................................................. 17

*United States v. Sherwood,*
  312 U.S. 584 (1941) .................................................................................. 17

*Webster v. Doe,*
  486 U.S. 592 (1988) .................................................................................. 18

*Wedgewood Village Pharmacy, LLC v. U.S. FDA,*
  No. 22-cv-02649 (KMW/SAK), 2022 WL 1591787 (D.N.J. May 19, 2022) ................ 10, 12

**Statutes**

5 U.S.C. §
  551(4) ......................................................................................................... 13
  551(6) ......................................................................................................... 13
  551(7) ......................................................................................................... 13
  551(10) ....................................................................................................... 12
  551(13) ................................................................................................. 12, 13
  701(a)(2) ..................................................................................................... 17
  702 ............................................................................................................. 17
  706(2) ......................................................................................................... 18

21 U.S.C. §
  332 ............................................................................................................... 4
  334 ............................................................................................................... 4
  337 ............................................................................................................... 4
  351(a)(2)(B) ................................................................................................. 5
  353(b)(4)(A)(i) ............................................................................................. 5
  353b(d)(1) .................................................................................................... 5
  353b(d)(4)(A) ............................................................................................... 5
  372(a)(1) ...................................................................................................... 3
  374 ............................................................................................................... 5
  374(a)(1) ...................................................................................................... 3
  374(b)(1) ...................................................................................................... 3
  375(b) ................................................................................................... passim
  393(b)(2) ...................................................................................................... 3

42 U.S.C. § 242o(b) ................................................................................................................ 5, 18

**Regulations and Rules**

21 C.F.R. §

    7.45................................................................................................................................ 4

    7.46................................................................................................................................ 4

    7.46(c) ........................................................................................................................... 4

Fed. R. Civ.  P. 12(b)(1) ........................................................................................................ 7

Fed. R. Civ.  P.  12(b)(6) ....................................................................................................... 7

INTRODUCTION

SCA Pharmaceuticals, LLC (SCA) seeks judicial review of a statement that the Food and Drug Administration (FDA) has not made, may never make, and whose contents are unknown. Black-letter law says that federal courts do not adjudicate hypothetical disputes or issue advisory opinions. And there is nothing more hypothetical than assessing the legality of an agency action that does not exist under a statutory authority that has not been invoked. Because this case transgresses the basic principles of ripeness (both constitutional and prudential) and of Administrative Procedure Act (APA) review, it should be dismissed.

SCA prepares sterile drug products at facilities in Arkansas and Connecticut, and then distributes them around the country. In September and October 2023, FDA inspected SCA's Connecticut facility. Investigators reported to SCA ten observations about regulatory compliance—none of which constituted final agency determinations. Based on this information, FDA also recommended to SCA that it voluntarily remove certain drug products from the marketplace. The agency and the company discussed a potential recall for several days—until suddenly, SCA filed this lawsuit and sought emergency relief.

This suit is entirely premised upon SCA's belief that FDA was poised to issue something the company calls a "Section 705(b) Notice." Except that term is not used in the Federal Food, Drug, and Cosmetic Act (FDCA) vernacular. Section 705(b) of the FDCA, 21 U.S.C. § 375(b), is simply one of several statutory authorities that permit FDA to publicly disseminate and report information, including on the agency's website. Such statements are no more a "Section 705(b) Notice" than every utterance of the president is an "Article II Declaration."

False packaging aside, this case should be dismissed for several reasons. *First*, SCA's claims are constitutionally unripe. The Court's subject-matter jurisdiction hinges

on the company's prediction of future harm from a non-existent FDA statement. But conjecture about contingent future events is insufficient to establish jurisdiction. And SCA only speculates about whether FDA might issue such a statement and what it might say. In other words, SCA wants what Article III precludes: an advisory opinion about a hypothetical action.

*Second*, SCA's claims are prudentially unripe. Administrative conduct is not fit for review unless and until it reaches the status of "final agency action." The hypothetical statement SCA attacks is neither an "agency action" under the APA nor a "final agency action." Press releases generally — and unissued ones certainly — do not consummate any internal decisionmaking process or determine any rights or obligations. They also trigger no deprivation of a liberty or property interest protected by the Fifth Amendment's Due Process Clause. So SCA will suffer no hardship while waiting to see if the issues ever ripen.

*Third*, Congress committed decisions about whether to issue a public statement to FDA's discretion. As a result, the APA's waiver of sovereign immunity does not extend to the future action challenged in the complaint. Thus, sovereign immunity bars SCA's APA claims.

*Finally*, even if SCA could establish subject-matter jurisdiction, its claims are factually implausible and legally meritless. Because no final agency action exists here, SCA cannot plausibly prove a fundamental element of an APA claim. The company's attacks on FDA's presumed reasoning are divorced from any actual agency explanation and thus are meaningless. The due process claim also fails because SCA alleges only potential harm to its business reputation, not to a requisite legal status or right. At the end of the day, this case should be dismissed.

2

BACKGROUND

## I.      FDA's relevant authorities to inspect and to inform

Congress has directed FDA, among other missions, to "protect the public health by
ensuring that . . . drugs are safe and effective." 21 U.S.C. § 393(b)(2). To that end, FDA
"conduct[s] examinations and investigations" regarding compliance with the FDCA. *Id.*
§ 372(a)(1). And the agency has authority to inspect "establishment[s] in which . . .
drugs . . . are manufactured, processed, packed, or held for introduction into interstate
commerce." *Id.* § 374(a)(1). These inspections "extend to all things therein," "including
records, files, papers, processes, controls, and facilities[,] bearing on whether" the drugs
are, among other things, "adulterated or misbranded." *Id.*

"Upon completion of" an inspection and before leaving the establishment, FDA
investigators must provide the most responsible person at the firm a written report
documenting "any conditions or practices observed by [them] which, in [their]
judgment, indicate" that a drug "(A) consists in whole or in part of any filthy, putrid, or
decomposed substance or (B) has been prepared, packed or held under insanitary
conditions whereby it may have become contaminated with filth, or whereby it may
have been rendered injurious to health." *Id.* § 374(b)(1). This report is made on an FDA
Form 483. *See* FDA, Investigations Operations Manual, at § 5.2.3 (2023),
https://perma.cc/W52H-BYXW. Although the FDCA only requires FDA to include
filth and insanitary conditions observations on the FDA Form 483, agency investigators
also may include many types of conditions that in their judgment may constitute
violations of the FDCA. *Id.* §§ 5.2.3.2, 5.2.3.2.2; *see also* Ex. A, ECF No. 1-1, at 2–15 ("SCA
Form 483"). An observation recorded on an FDA Form 483 "does not represent a final
Agency determination" of whether any condition is in violation of the FDCA or any of
its relevant regulations. SCA Form 483, ECF No. 1-1, at 2; *see* FDA, Investigations
Operations Manual § 5.2.3.3 ("The determination of whether any condition is violative

3

is an agency decision made after considering all circumstances, facts and evidence.").
The inspected entity may object, or otherwise respond, to any observation "with the
FDA representative(s) during the inspection" or subsequently in writing. SCA Form
483, ECF No. 1-1, at 2.

FDA then "considers all of this information" when "determin[ing] what further
action, if any, is appropriate to protect public health." FDA, FDA Form 483 Frequently
Asked Questions (Jan. 9, 2020), https://perma.cc/8LW5-KDKH. Sometimes no
additional action is necessary. A firm may voluntarily "implement[] corrective action in
response to an [inspectional] observation." SCA Form 483, ECF No. 1-1, at 2. For
instance, a "firm may decide of its own volition to remove" violative products from the
market. 21 C.F.R. § 7.46.

If FDA deems further action is appropriate though, a range of options is available
to the agency. The agency can send a warning letter. *See Holistic Candlers & Consumer
Ass'n v. FDA*, 664 F.3d 940, 944–45 (D.C. Cir. 2012) (describing warning letters). FDA
may informally recommend a firm cease distribution and recall affected products. *See*
21 C.F.R. § 7.46(c). Or, when "necessary to protect the public health and welfare," FDA
"may request a firm to initiate a recall" of a product that "presents a risk of illness or
injury or gross consumer deception." *Id.* § 7.45. Depending on the circumstances, FDA
also may refer the matter to the Department of Justice for a judicial enforcement
proceeding. *See* 21 U.S.C. §§ 332, 334, 337 (authorizing injunctions and seizures).

Additionally, FDA may communicate information regarding FDA-regulated
products to the public. As relevant here, the agency may "disseminate[] information
regarding . . . drugs . . . in situations involving, in the opinion of the [agency], imminent
danger to health." 21 U.S.C. § 375(b). It also may "collect[], report[], and illustrate[e] the

results of [its] investigations." *Id.* And FDA generally can "issue information related to public health . . . for the use of the public." 42 U.S.C. § 242*o*(b).[1]

## II.    FDA's inspection of SCA's Windsor establishment

SCA is a large-scale "pharmaceutical compounder" headquartered in Arkansas. Compl., ECF No. 1, ¶¶ 1–2; *see* 21 U.S.C. § 353b(d)(1) ("'compounding' includes the combining, admixing, mixing, diluting, pooling, reconstituting, or otherwise altering of a drug or bulk drug substance to create a drug"). After a 2012 meningitis outbreak involving contaminated compounded drugs killed more than 60 people and infected hundreds more, Congress amended the FDCA to "create[] a new category of drug maker called an 'outsourcing facility.'" *Athenex Inc. v. Azar*, 397 F. Supp. 3d 56, 59 (D.D.C. 2019). SCA operates outsourcing facilities in Little Rock, Arkansas, and Windsor, Connecticut, which "engage[] in the compounding of sterile drugs." 21 U.S.C. § 353(d)(4)(A); Compl. ¶ 2. The drugs made at these facilities must, among other things, be produced "in conformity with current good manufacturing practice to assure" compliance with the FDCA's safety, quality, and purity requirements. 21 U.S.C. § 351(a)(2)(B); *see* Compl. ¶¶ 40–41.

Outsourcing facilities are "subject to inspection" by FDA. 21 U.S.C. § 353(b)(4)(A)(i) (citing *id.* § 374). In September and October 2023, FDA inspected SCA's Windsor Facility. Compl. ¶ 61. At the close of the inspection, on October 20, 2023, FDA issued to the company an FDA Form 483 with 10 inspectional observations. *See* SCA Form 483, ECF No. 1-1, at 2–15. One such observation, Observation 1, noted that SCA did "not require identification of particulates found" in purportedly sterile drugs "during the

---

[1] The Secretary of Health and Human Services has delegated to the Commissioner of Food and Drugs functions vested in the Secretary under the Public Health Service Act, 42 U.S.C. § 242*o*(b), to issue health-related information for the public's use and to inform persons and institutions concerned with health services about other information that is related to FDA's functions. FDA, FDA Staff Manual Guides, Vol II – Delegations of Authority, SMG 1410.10, § 1(A)(22) (Feb. 22, 2023), https://perma.cc/3HY8-VNL8.

visual inspection process." SCA Form 483, ECF No. 1-1, at 2. Also, the investigators noted that on at least 55 occasions, SCA released, for distribution to patients, products that failed three quality checks. *Id.*

SCA understood this FDA Form 483 "itself carrie[d] no sanction" and its "observations [we]re just that." Compl. ¶ 85. The company also recognized that issuance of the FDA Form 483 was "meant to commence an iterative process." *Id.* Indeed, SCA "intended, and still intends, to adjust its procedures to redress each of FDA's observations." *Id.* ¶ 10; *see, e.g.,* Ex. B, ECF No. 1-2, at 2 (describing efforts taken to inform and compile the company's Form FDA 483 response).

On November 2, 2023, based on information gathered during the inspection, FDA contacted SCA with "serious concerns about" the company's "sterile drug products within expiry." Ex. B, ECF No. 1-2, at 6. These concerns related to "quality controls, sterility controls," and the "visual inspection process." *Id.; see id.* 4-6 (bullet pointed concerns). Due to these concerns, FDA "recommended that [SCA] recall all . . . sterile drug products on the market." *Id.* 4.

The next day, SCA agreed to voluntarily remove certain products from the market while it considered "additional steps" for others. *Id.* 4. In response, FDA "recommended" SCA start by recalling "sterile drug products that failed [the] first 100% visual inspection within expiry." *Id.* 3. The agency also asked for an update about the other products' recall status by November 6. *Id.*

On November 6, SCA informed FDA that "analyses have led [the company] to believe a more limited recall" was "appropriate." *Id.* 2. SCA further expressed a desire to "substantively engage . . . on the modified, agreed scope of a limited recall, including [the] rationale for [its] proposal." *Id.* But only hours later—before FDA could "substantively respond[]," Compl. ¶ 13—the company filed suit.

### III.   SCA's lawsuit

SCA challenges "an official public announcement" FDA supposedly was "poised to issue." Compl. ¶¶ 12–13. The complaint alleges this not-yet-taken action violates the APA (Counts I and II) and the Fifth Amendment's Due Process Clause (Count III). *Id.* ¶¶ 104–24. Along with filing the complaint, SCA moved for a temporary restraining order and preliminary injunction to prohibit Defendants from "printing or publishing any press release or statement regarding [FDA's] investigation of" SCA. PI Mot., ECF No. 4; *see* PI Mem., ECF No. 5.

Defendants now move to dismiss this entire case for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.

### LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, the Court "presume[s]" to "lack jurisdiction" unless the plaintiff carries the "burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). At the pleading stage, therefore, SCA must "affirmatively and plausibly" allege facts to demonstrate jurisdiction. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Review of a facial challenge to jurisdiction is "based solely on the allegations of the complaint . . . and exhibits attached to it." *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 140 (2d Cir. 2021) (quoting *Carter*, 822 F.3d at 56).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss" under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Accordingly, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A claim that fails as a matter of law also "must be dismissed, without regard

to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

ARGUMENT

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). And they "do not issue advisory opinions." *Id.* Yet SCA asks this Court to do what Article III prohibits by declaring illegal a press release that FDA has not issued, may never issue, and whose contents are unknown. This suit exceeds "the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Cuno*, 547 U.S. at 341).

Even if SCA could show constitutional ripeness, this case remains prudentially unripe. The issues are not fit for review when the administrative conduct has not yet occurred. And neither a hypothetical FDA press release nor an actual one qualifies as "agency action," much less "final agency action." Furthermore, SCA has not plausibly alleged the requisite elements of an APA claim or a due process claim. This case should be dismissed.

## I.    SCA's speculative challenge to an unissued statement is not justiciable

SCA's APA and due process claims are barred by "[t]wo related doctrines of justiciability": standing and ripeness. *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam). Because SCA's allegation of imminent harm is purely speculative, the company lacks standing and all its claims are constitutionally unripe. The case also is prudentially unripe because no final agency action may ever exist and no deprivation of a protected liberty interest may ever occur. At bottom, "this case is riddled with contingencies and speculation that impede judicial review." *Id.*

**A.  This case is constitutionally unripe because no harm to SCA is imminent**

"[T]he doctrine of constitutional ripeness overlaps with the standing doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." *Lacewell*, 999 F.3d at 149 (internal quotations omitted). The Supreme Court has "repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (cleaned up). That means, "at the pleading stage, the plaintiff must clearly allege facts demonstrating" an imminent injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). SCA falls well short of the mark, offering only "unadorned speculation" that "will not suffice to invoke the federal judicial power." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976).

Because "subject-matter jurisdiction depends on the state of things at the time of the action brought," *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007), we look to "the facts as they exist when the complaint is filed," *Newman-Green, Inc. v. Alfonzo-Lorrain*, 490 U.S. 826, 830 (1989) — here, November 6. As of that date, SCA does not allege that it suffered any actual injury. Rather, SCA feared possible future injury *if* FDA issues a public statement "claiming that all of SCA's products from its Windsor Facility pose an imminent danger and should not be used by anyone." Compl. ¶ 101.

SCA alleged that "FDA right now has a [statement] drafted and set to issue against SCA this afternoon." *Id.* ¶ 13. But a "plaintiff's subjective apprehensions" and speculations are irrelevant to the issue of jurisdiction. *City of L.A. v. Lyons*, 461 U.S. 95, 107 n.8 (1983); *see, e.g.*, *Simon*, 426 U.S. at 44; *Loc. No. 773 of the Int'l Ass'n of Firefighters v. City of Bristol*, No. 3:11CV1657 MPS, 2013 WL 1442453, at *3 (D. Conn. Apr. 9, 2013) ("[A] subjective fear of future harm cannot serve as an independent basis for an injury-in-fact."). Instead, a plaintiff must "allege facts that affirmatively and plausibly suggest,"*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011), "the

reality of" that imminent injury, *Lyons*, 461 U.S. at 107 n.8. SCA's complaint is barren of any such well-pleaded facts.

SCA does not allege it was privy to FDA's internal deliberations about this situation. From the face of FDA's communications with SCA (which are attached as exhibits to the complaint) though, it is readily apparent that the agency never mentioned, much less threatened, a public statement. *See* ECF No. 1-2, at 2–10; *see also Amidax Trading*, 671 F.3d at 147 ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true."). To compensate for the lack of well-pleaded facts, SCA conjures the specter of a "standard, dreaded practice" by which a "request for further engagement or explanation" from FDA "will immediately trigger scathing condemnation." Compl. ¶ 14. However, the only support for this purportedly widespread practice is a 2014 law review article (which itself discusses no specific examples), *see id.* ¶ 46 n. 9–10, and a 2019 public warning about "drugs intended to be sterile" that the agency followed up with a "formal recall request," FDA, *FDA announces Pacifico National Inc.'s, dba AmEx Pharmacy, voluntary recall of all sterile compounded drugs*, https://perma.cc/MBX4-4F6U; *see* Compl. ¶ 48; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (considering document referenced in complaint on a motion to dismiss). These two disparate and limited items cannot bridge the gap between "possibility and plausibility," *Iqbal*, 556 U.S. at 678, for SCA to show "objective[ly]" imminent harm when it filed suit, *Clapper*, 568 U.S. at 418.

Two cases—neither of which Plaintiff mentions—reached the same conclusion under similar procedural circumstances. In *Wedgewood Village Pharmacy, LLC v. U.S. FDA*, No. 22-cv-02649 (KMW/SAK), 2022 WL 1591787 (D.N.J. May 19, 2022),[2] a compounding pharmacy sought "to prevent the FDA from issuing any press release or

---

[2] Plaintiff's counsel also appeared in *Wedgewood Pharmacy*.

Notice informing the public about the results of" an inspection," *id.* at *5. But the absence of any "publication . . . presented for review . . . reduc[ed] the Court's review to a hypothetical notice or press release." *Id.* And the court, on ripeness grounds, refused to issue "an advisory opinion concerning a potential and theoretical publication that the FDA *may* issue in the future." *Id.*

Similarly, in *Arrow Reliance, Inc. v. Woodcock* ("*Arrow Reliance I*"), No. 22-cv-1057, 2022 WL 3104102 (W.D. Wash. Aug. 4, 2022), a pet food company feared that FDA would issue a press release about its products, *id.* at *2. Yet the court found any injury "remains too hypothetical and abstract to satisfy constitutional ripeness." *Id.* The court did not know "whether FDA will issue a statement" and "even if such a statement is issued, the content of the statement." *Id.* And it declined "to speculate about" "[t]hese hypotheticals" in order to engage in judicial review. *Id.* The reasoning of *Wedgewood Pharmacy* and *Arrow Reliance I* applies equally here.

Ultimately, the complaint's "prediction about future injury [is] just that—a prediction." *Trump*, 141 S. Ct. at 536. The feared injury is entirely "dependent on 'contingent future events'"—FDA's issuance of a public statement—"that may not occur as anticipated, or indeed may not occur at all." *Id.* at 535 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). As a result, SCA's claims "are not suitable for adjudication at this time." *Id.* at 537.

**B.  This case is prudentially unripe because no final agency action exists**

Atop the lack of constitutional ripeness, SCA's challenge also is prudentially unripe. *See Simmonds v. INS*, 326 F.3d 351, 356–57 (2d Cir. 2003) (distinguishing the "two forms of ripeness"). "To determine whether a challenge to administrative action is ripe for judicial review," the Court conducts "a two-step inquiry . . . 'to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 131–32 (2d Cir.

2008) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). Here, the issues are not fit for review until, at least, FDA takes (if it ever does) the action SCA tries to challenge. And awaiting that event inflicts no hardship on the company because an untaken action necessarily causes no harm.

### 1.   A hypothetical statement is not "agency action" or "final agency action"

"The APA requirement of final agency action relates closely to" the ripeness inquiry. *Sharkey v. Quarantillo*, 541 F.3d 75, 89 (2d Cir. 2008). Indeed, "an agency action [must] be final before a claim is ripe for review." *Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir. 1999). Because a hypothetical FDA statement is not "agency action," much less "final agency action," the issues raised in the complaint are not fit for review.

*No "agency action."* To sue under the APA, SCA first "must identify some 'agency action,'" within the meaning of 5 U.S.C. § 551(13); the company is only entitled to "judicial review 'thereof.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). The one potential "agency action" identified by SCA is a hypothetical statement that FDA would issue under 21 U.S.C. § 375(b). *See* Compl. ¶ 105 ("FDA's imminent Section 705(b) Notice is a final agency action.").

Of the APA's discrete types of agency action, *see* 5 U.S.C. § 551(13), SCA says the non-existent statement would operate as a "sanction[]," Compl. ¶ 12. However, ticking through the definitional categories of a "sanction," 5 U.S.C. § 551(10), none facially apply. An unissued statement does not plausibly limit SCA's "freedom," withhold relief, impose a fine, take or withhold SCA's property, assess damages, revoke any license, or take "other compulsory or restrictive action." *Id.*; *see also Indus. Safety Equip. Ass'n v. EPA*, 837 F.2d 1115, 1119, 1121 (D.C. Cir. 1988). Thus, under "the plain reading of the APA," a "yet to be issued notice or press release is not agency action and cannot be final action because the statements have not been released." *Wedgewood Pharmacy*, 2022 WL 1591787 at *5; *see Arrow Reliance I*, 2022 WL 3104102, at *3 ("The APA clearly

defines when agency action occurs, the issuing of a notice or press release is not included in that definition."); *see also Pharm. Mfrs. Ass'n v. Kennedy*, 471 F. Supp. 1224, 1227–31 (D. Md. 1979) (FDA's dissemination of information under 21 U.S.C. § 375(b) is not "agency action").

What's more, the hypothetical FDA statement wouldn't qualify under any other defined category of "agency action." 5 U.S.C. § 551(13). Such a statement isn't "a final disposition," formulated through an FDA "adjudication" process and with "determinate consequences" for SCA. 5 U.S.C. § 551(7); *Int'l Tel. & Tel. Corp. v. Loc. 134, Int'l Bhd. of Elec. Workers*, 419 U.S. 428, 443 (1975). It would "not order anybody to do anything," and "standing alone," it would "bind[] no one." *Int'l Tel. & Tel.*, 419 U.S. at 444 (quotation omitted). So the hypothetical statement wouldn't constitute an "order." 5 U.S.C. § 551(6). And the same absence of any "legal effect" precludes treatment of the hypothetical as a "rule." 5 U.S.C. § 551(4); *see Gonnella v. SEC*, 954 F.3d 536, 546–47 (2d Cir. 2020); *Amoco Prod. Co. v. Watson*, 410 F.3d 722, 732 (D.C. Cir. 2005) (Roberts, J.), *aff'd sub nom. BP Am. Prod. Co. v. Burton*, 549 U.S. 84 (2006).

**No "final" agency action.** Even if a public statement FDA might issue were an "agency action," SCA also must show it is "final agency action." *Lujan*, 497 U.S. at 882. An "agency action" is "final" only when it (1) "mark[s] the consummation of the agency's decision-making process" and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). "[N]ot every letter from an administrative agency articulating its views qualifies as final agency action." *Pearl River Union Free Sch. Dist. v. King*, 214 F. Supp. 3d 241, 259 (S.D.N.Y. 2016). For example, courts repeatedly have held that FDA warning letters, which address matters of FDCA compliance, are not final agency actions. *See, e.g.*, *Holistic Candlers*, 664 F.3d at 944–45; *Swisher Int'l, Inc. v. FDA*, No. 21-13088, 2022 WL 320889, at *5 (11th Cir. Feb. 3, 2022); *Dietary Supplemental*

13

*Coalition, Inc. v. Sullivan*, 978 F.2d 560, 563 (9th Cir. 1992); *Hi-Tech Pharm., Inc. v. Hahn*, No. 19-1268 (RBW), 2020 WL 3498588, at *5 (D.D.C. June 29, 2020).

   *Holistic Candlers* is instructive. There, FDA issued public warning letters to ear candle manufacturers and distributors advising them that FDA considered their products to be adulterated and misbranded. 664 F.3d at 942. After some recipients challenged the letters in court, the D.C. Circuit concluded that they were not final agency action. *Id.* at 943. First, the warning letters did not mark the "consummation" of FDA's decision-making process because they did not commit the agency to enforcement action. *Id.* at 944. Second, the letters did not "represent a decision determining rights or obligations, or one from which legal consequences flow," because they simply "communicate[d] the agency's position on a matter" and did not "compel[] action" by either the recipients or the agency. *Id.* Just so here.

   No FDA decisionmaking process about SCA was consummated. The agency issued a post-inspection FDA Form 483, which SCA acknowledges "carrie[d] no sanction" and "commence[d] an iterative process." Compl. ¶ 85. As for the agency's recommendation that SCA voluntarily remove certain products from the market, those discussions were ongoing when the company filed suit (and still are). *See* ECF No. 1-2, at 2-3. And naturally, no decisionmaking about a public statement had concluded because nothing had issued. But even if a statement had been made, that still would "not mark a definitive end to a decision making process," because it wouldn't contain any "definitive position taken by the FDA." *Arrow Reliance, Inc. v. Califf* ("*Arrow Reliance II*"), Case No. 2:22-cv-1057, 2022 WL 18027595, at *4 (W.D. Wash. Dec. 30, 2022).

   Furthermore, an unmade statement doesn't determine "rights or obligations" or create "legal consequences." *Bennett*, 520 U.S. 154, 177–78 (1997). An uttered one wouldn't either. A statement authorized under 21 U.S.C. § 375(b) "mak[es] no order," "adjudicate[s] no rights," and "issues no direction." *Hoxsey v. Folsom*, 155 F. Supp. 376, 378 (D.D.C. 1957); *see Arrow Reliance II*, 2022 WL 18027595, at *5 (FDA "press release

does not determine any rights or obligations or produce any legal consequences"). Rather, it simply disseminates information to the public about FDA's view on particular products. *See Arrow Reliance II*, 2022 WL 18027595, at *5; *cf. Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1311 (Fed. Cir. 2015) ("FDA's public warnings did not restrict the Tomato Producers from selling their produce, nor did it place any restriction on how they may use or dispose their tomatoes."). Any "persuasive value" of a statement on third parties' decisionmaking would be "attributable to [the] independent responses and choices of third parties." *Flue-Cured Tobacco Cooperative Stabilization Corp. v. EPA*, 313 F.3d 852, 861 (4th Cir. 2002). Without any agency action or final agency action, this case is not fit for review.

### 2.  A due process analysis of a hypothetical statement is premature

Generally, "procedural due process claims are unripe if they are based on the same set of facts as" other "unripe substantive" claims. *Kowalczyk v. Barbarite*, 594 F. App'x 690, 692 (2d Cir. 2014). Here, same as the APA claims, SCA's due process claim is predicated on a future deprivation from a hypothetical FDA statement. *See* Compl. ¶ 123. So like the APA claims, the due process claim is unripe too. *See Brezler v. Mills*, 86 F. Supp. 3d 208, 218 (E.D.N.Y. 2015).

There is nothing special about a due process claim that would alter the ripeness analysis. On the contrary, such a claim is non-justiciable "[w]here the challenged procedures have not been applied to the claimant, or where, after their application, the agency has not rendered a final decision adverse to the claimant." *Coffran v. Bd. of Trs. of N.Y.C. Pension Fund*, 46 F.3d 3, 4 (2d Cir. 1995) (per curiam). For example, in *Thomas v. City of New York*, 143 F.3d 31 (2d Cir. 1998), the Second Circuit faced a challenge to New York City's licensing scheme for livery cabs. As the court observed though, none "of plaintiffs' licenses has been denied," and they "have not, as yet, suffered any harm to their procedural due process rights." *Id.* at 35. Thus, the case was "premature" because

15

"procedural due process is best considered in the context of a specific factual setting." *Id.* at 34–35.

*Daley v. Mathews*, 536 F.2d 519 (2d Cir. 1976), offers another highly useful illustration. There, a physician sought "an injunction against any future inspection" of her office by FDA. *Id.* at 520. Notwithstanding the physician's "claims that continued investigation . . . will destroy her professional reputation and drive away patients," the Second Circuit affirmed dismissal of the case as unripe. *Id.* at 521. This conclusion stemmed from the fact that, so far, "FDA ha[d] declined to take any affirmative action which could ripen the controversy for judicial review." *Id.* And it was "impossible to predict whether the agency will attempt another inspection," commence a judicial proceeding, "or whether it will simply do nothing." *Id.* at 521–22. Thus, "[a]t bottom all that [the physician] suffer[ed] [wa]s the tentative possibility of a future inspection," which would not suffice. *Id.* at 522.

As in *Daley*, SCA alleges only the tentative possibility, without the "requisite certainty," that FDA will issue any public statement. *Id.* That FDA may "simply do nothing" alone renders the claim non-justiciable. *Id.* at 522. But even if FDA made a statement, the uncertainty about its content further precludes adjudication of SCA's due process claim. In asking the Court to enjoin FDA from publishing any press release "regarding its investigation of SCA," the company presumes the nature of the statement "would predictably extinguish or at least cripple SCA's entire business." Compl. pp. 36–37. Yet without knowing what precisely FDA would say, that outcome is pure speculation. Thus, the issues in the due process claim too are not fit for review.

As the Second Circuit said, "[c]ourts have no business adjudicating the legality of non-events." *Nat'l Wildlife Fed'n v. Goldschmidt*, 677 F.2d 259, 263 (2d Cir. 1982). And FDA's hypothetical statement is just that.

16

### 3.  SCA would suffer no hardship from deferring review

Meanwhile, SCA will "suffer no concrete harm from" deferring review because the company is presently not required "to do anything or to refrain from doing anything." *Trump*, 141 S. Ct. at 536 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998)). Hardship exists only when "the challenged action creates a direct and immediate dilemma for the parties." *Connecticut v. Duncan*, 612 F.3d 107, 115 (2d Cir. 2010). An unissued press release generates no real-world effects. Rather, "the source of any injury to" SCA "is the action that" FDA "*might* take in the future." *Trump*, 141 S. Ct. at 536 (internal quotation omitted). And "[t]he mere possibility of future injury," without any "present detriment, does not constitute hardship." *Connecticut*, 612 F.3d at 115 (quoting *Simmonds*, 326 F.3d at 360); *see, e.g.*, *Daley*, 536 F.2d at 522.

### C.  FDA's discretionary decisions about whether to disseminate information are unreviewable under the APA

The Court also lacks jurisdiction over the APA claims for a third reason. "[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Although the APA contains a waiver of sovereign immunity for judicial review of certain agency actions, 5 U.S.C. § 702, that waiver does not extend to actions "committed to agency discretion by law," 5 U.S.C. § 701(a)(2). "This limitation on the APA's waiver of immunity means that there is no jurisdiction if the statute or regulation said to govern the challenged agency action 'is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion.'" *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). Here, there is no meaningful standard against which to judge FDA's decisions to issue a press release.

17

Looking to "the statute on which the claim of agency illegality is based," *Lunney*, 319 F.3d at 558 (quoting *Webster v. Doe*, 486 U.S. 592, 600 (1988) (emphasis omitted)), FDA possesses express and implied authority to issue public statements, *see, e.g.,* 21 U.S.C. § 375(b); 42 U.S.C. § 242*o*(b); *Hoxsey*, 155 F. Supp. at 378. None of these authorities "limit[s]" FDA's "discretion" about when a public statement is warranted. *Lunney*, 319 F.3d at 558. Nor do they "furnish[] a 'meaningful standard against which to judge" FDA's "exercise of discretion" about when to report the results of investigations or disseminate information to the public. *Id.* (quoting *Heckler*, 470 U.S. at 830). Thus, the APA's waiver of sovereign immunity does not apply to the putatively challenged statements. Accordingly, the Court should dismiss the APA claims for lack of subject matter jurisdiction.

## II.    SCA also fails to plead any plausible claim for relief

Even if the Court had jurisdiction to hear SCA's APA and due process claims, they should be dismissed under Rule 12(b)(6) because they lack adequate factual and legal support. *See Neitzke*, 490 U.S. at 326–27.

Counts I and II contend that "FDA's imminent Section 705(b) Notice" is arbitrary and capricious under the APA, 5 U.S.C. § 706(2). Compl. ¶¶ 104-19. But "the APA permits judicial review of only 'final agency action[s].'" *Top Choice Distribs., Inc. v. U.S. Postal Serv.*, 138 F.3d 463, 466 (2d Cir. 1998) (quoting 5 U.S.C. § 704). Because SCA doesn't challenge any final action taken by FDA, APA review is unavailable.

The reality of APA review highlights the need for dismissal. "[I]n reviewing agency action," the court "evaluat[es] the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2573 (2019). Notwithstanding SCA's best efforts at shadowboxing, *see* Compl. ¶¶ 104–19, APA review cannot occur when no final action has issued and therefore, no contemporaneous explanation exists. Thus, Counts I and II should be dismissed.

Finally, for Count III's due process claim, *see* Compl. ¶¶ 120–24, SCA must plausibly allege "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process," *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). As discussed in section I.B.2. above, the company cannot clear the second hurdle because no deprivation of any protected interested has yet occurred. Nor can SCA clear the first.

Although SCA claims that reputational harm "deprives a person of its liberty interest," Compl. ¶ 122, there is "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause," *Paul v. Davis*, 424 U.S. 693, 702 (1976). "[R]eputation alone, apart from some more tangible interests such as employment," is not "'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701. Thus, SCA must show both an "alleged defamation" and "an *additional* 'deprivation of a legal right or status.'" *Sadallah v. City of Utica*, 383 F.3d 34, 38–39 (2d Cir. 2004) (quoting *Abramson v. Pataki*, 278 F.3d 93, 101, 103 (2d Cir. 2002)) (emphasis added).

The only deprivation alleged in the complaint is harm to the company's business. *See* Compl. ¶ 123. But that alleged harm is "not in addition to the alleged defamation"; rather, it would be the "direct deleterious effect[] of that defamation." *Sadallah*, 383 F.3d at 38. And the Second Circuit is clear that the "possible adverse effect of" agency action on a plaintiff's "future business prospects is insufficient by itself to give rise to a claim that one has been deprived of a liberty interest." *Asbestec Const. Servs., Inc. v. EPA*, 849 F.2d 765, 769 (2d Cir. 1988); *see Sadallah*, 383 F.3d at 38–39 (holding that plaintiffs' allegations of "damage not only to their business reputation, but [also the deprivation] of the good will in their business" and "discourage[ment] [to] customers" were insufficient to state a due process claim); *see also Autotech Collision Inc. v. The Inc. Vill. of Rockville Ctr.*, 673 F. App'x 71, 74 (2d Cir. 2016) (due process claim "fails because [plaintiffs] allege only damage to professional and personal reputation and resulting

loss of business, injuries that may support state tort claims but not a constitutional action"); *Cutie v. Sheehan*, 645 F. App'x 93, 95 (2d Cir. 2016) (expressing doubt that "plaintiffs can state a cognizable due process claim simply by classifying the damage to their reputation as damage to the 'goodwill' of their business"). Thus, SCA's "economic-harm argument . . . does not satisfy the separate and independent" requirement of a deprivation to legal status or right. *Sadallah*, 383 F.3d at 39. Accordingly, Count III should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

November 21, 2023                    Respectfully submitted,

                                     /s/ James W. Harlow
                                     JAMES W. HARLOW (phv207575)
                                     Acting Assistant Director
                                     Consumer Protection Branch
                                     Civil Division
                                     U.S. Department of Justice
                                     PO Box 386
                                     Washington, DC  20044-0386
                                     (202) 514-6786
                                     (202) 514-8742 (fax)
                                     james.w.harlow@usdoj.gov